IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BETZAIDA ABDUL-LATIF a/k/a** | : | |
| **BETZAIDA COLON,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 12-948** |
| | : | |
| **COUNTY OF LANCASTER, et. al.** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**STENGEL, J.**                                        **January 2, 2014**

This employment discrimination matter arises from plaintiff's termination from the Lancaster Employment and Training Agency.  Plaintiff sued Lancaster County and her supervisors Catherine Long and Joseph Shriffer.  Defendants have moved for summary judgment on each of plaintiff's twelve claims.  For the reasons that follow, I will grant summary judgment in favor of defendants on plaintiff's Monell and PHRA Public Accommodations claim.  Otherwise, defendants' motion is denied.

**I.       BACKGROUND**

Betzaida Abdul-Latif, a resident of Lancaster, Pennsylvania, is an Hispanic woman of Puerto Rican descent.  Compl ¶ 5, 7 and 8.  Her first language is Spanish. Compl. ¶ 11.  In July 2008, plaintiff began working for Lancaster Employment and Training Agency (LETA) as a case manager/career advisor in the Employment, Advancement and Retention Network (EARN) program.  Defs.' Statement of Undisputed Facts ¶16 (Doc. No 40-2).  At the time she was terminated, plaintiff was the lead for an

LETA program referred to as the Corporate Center.  Id. ¶ 18.  LETA is a career services agency for defendant Lancaster County.  Id. ¶ 1.  EARN assists welfare recipients gain and maintain employment through education and training.  Id. ¶ 3.  Defendant Catherine Long was the EARN program manager and was plaintiff's supervisor at LETA.  Id. ¶ 9, 10.  Defendant Joseph Shiffer was the Executive Director of LETA and was defendant Long's supervisor.  Id. ¶ 9, 11.

LETA required all participants to speak English while attending the program.  The EARN handbook includes a policy which states, "Because the Learning Lab is a place to help prepare you for today's job market, we respectfully ask that you speak English only while conducting your job search."  Id. ¶ 24.  Defendants argue that the purpose of the policy was to improve clients' English abilities to make them more competitive in the job market.  Id. ¶ 26.  Defendants took various measures to enforce the policy.  First in 2008, defendant Long met with several LETA employees who spoke Spanish and instructed them to stop speaking Spanish with each other.  Id. at 29.  In 2009, defendant Long instructed plaintiff to only speak English with her clients.  Id. ¶ 35.  Finally, plaintiff was instructed to post signs containing the English only policy at the Corporate Center in February 2010.  Id. ¶ 39.

Ms. Abdul-Latif argues that the English only policy was discriminatory and unfair because many of the EARN participants at the Corporate Center were native Spanish speakers and had difficulty speaking English.  Id. ¶ 5, 43.  On more than one occasion, plaintiff complained to defendant Long that the policy was unfair to the Spanish speaking clients.  Id. ¶ 51.  Nonetheless, defendant Long insisted that only English be spoken

2

without exception.  Id. ¶ 32.  Luz Ramos, Janilsa Molina and Jasmine Cordero, who were plaintiff's clients at the Corporate Center, complained to Ms. Abdul-Latif that the English only policy was unfair.  Plaintiff advised the clients to file a complaint with the Lancaster County Human Relations Commission (LCHRC), and she gave the clients the phone number for the commission.  Id.  47, 48.  On June 24, 2010, Lancaster County received notice of three LCHRC complaints filed by EARN clients.  Id. ¶ 53.  Plaintiff was terminated on July 20, 2012.  Id ¶ 96, 97.  Plaintiff claims she was terminated because she was Hispanic and in retaliation for opposing the English only policy and advising her clients to file the LCHRC complaints.

Defendants respond that plaintiff was terminated because she used her work email account for personal gain in violation of county policy.  On July 8, 2010, Mr. Shiffer and Ms. Long met with Quetsy Soto, plaintiff's coworker.[1]  Id. ¶ 75-77.  During this meeting, Ms. Soto told the defendants: "Betsy's [sic] comes to door, opens slightly, puts her hand in to room and motions for specific participant [sic] to come with her.  Participants are those who recently filed complaints against LETA's EARN program."  Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. XX at 2 (Doc No. 49 Ex. 3).  Later that day, defendant Shiffer also interviewed Chris Williams, plaintiff's co-worker, who reported that plaintiff complained about defendant Long, the English only policy, and that plaintiff took Spanish speaking clients outside the Corporate Center to speak in Spanish.  Defs.' Statement of Undisputed Facts at ¶ 89.

---

[1] The parties dispute the reason for this meeting.  Defendants claim they met with Ms. Soto because she complained that plaintiff was harassing her.  Plaintiff denies that she harassed Ms. Soto and that Ms. Soto complained of any harassment.  Rather, plaintiff claims that defendants sought out Ms. Soto to establish a pretext for termination.

After meeting Ms. Soto and Mr. Williams, Mr. Shiffer began reviewing plaintiff's email account. Id. ¶ 80. Mr. Shiffer found emails pertaining to plaintiff's perfume sales business, applications for employment outside of LETA, and other personal emails which violated county policy. Id. ¶ 86.[2] On July 14, Mr. Shiffer began drafting plaintiff's termination paperwork. Pl.'s resp. to Defs.' Mot. for Summ. J. Ex. PP at 2 (Doc. No. 48-2). Plaintiff was terminated on July 20, 2010. Id. ¶ 91, 96-97.

Violations of the Email policy had been an ongoing problem at LETA. In the months leading up to plaintiff's termination, three inappropriate emails had been sent by LETA employees in violation of Mr. Shiffer's instruction not to use email for non-work related purposes. Defs.' Statement of Undisputed Facts ¶ 58. The first email depicted a black bear, named Bearack Obearma, sitting at an empty picnic table. The email laments:

> Animals that were formerly self-sufficient are now showing signs of belonging to the Democrat Party … as they have apparently learned to just sit and wait for the government to step in and provide for their care and sustenance."

Defs.' Mot. for Summary J. Ex. F (Doc. No. 40-11). The second email included an image of the Puerto Rican flag and poked fun at the differences in skin color between Caucasians and Puerto Ricans.[3] Id. Ex. G (Doc. No. 40-12). The last email includes a picture of a dog and goes on to say:

---

[2] Plaintiff denies that she used her county email address for personal financial gain.

[3] The email states: "A Puerto Rican walks into a bar full of white people…white man says, 'Colored people are not allowed here," The Puerto Rican man turned around and stood up. He then said: 'Listen Pendejo...When I was born I was TAN, When I grew up, I was TAN, When I get sick, I'm TAN, When I go in the sun I'm TAN, When I'm cold I'm TAN, When I die I'll be TAN. But you Pendejo…When you're born, you're pink, when you grow up your white, when you're sick you're green, when you go in the sun your turn red, when you're cold, you turn blue and when you die you turn purple, And you got the nerve to call me colored?'"

> I went down this morning to sign up my dog for welfare.  At first the lady said, "Dogs are not eligible to draw welfare." So I explained to her that my dog is mixed in color, unemployed, lazy, can't speak English and has no frigging clue who his daddy is.  He expects me to feed him, provide him with housing and medical care, and feel guilty because he is a dog.  So she looked in her policy book to see what it takes to qualify.  My dog gets his first check Friday.

Id. Ex. H (Doc. No. 40-13).

Mr. Shiffer held a meeting with LETA staff on April 16, 2010 to express his disappointment regarding the inappropriate emails.  He also began to inspect employee email accounts to ensure appropriate use.  Defs.' Statement of Undisputed Facts ¶ 69.  As a result, several employees were disciplined for the unacceptable use of their email accounts.  Defendant Long, who had sent the welfare dog email, was suspended for one day.  Id. ¶ 73.  Marisela Ortiz received a written warning for forwarding the Puerto Rican flag email.  Id.  Marybeth Stover received a written warning for forwarding photographs.  Id.  Gerald Simmons was disciplined for sending substantially more personal emails than his coworkers including emails conducting his ministerial work.  Id.  Michelle Zohlman was suspended for one day as a result of her second facebook infraction.  Id.  Finally, Areerat Timsonravichkit received a written warning for forwarding the welfare dog email.  Id.  Ms. Long, Ms. Stover, Mr. Simmons, Ms. Zohlman and Ms. Timsonravichkit are not Hispanic.[4]

---

[4] This race and ethnicity of plaintiff's co-workers is not contained in the record.  Rather, plaintiff argues that her co-workers were non-members of her protected class in her response to defendants' motion for summary judgment.  As defendants do not dispute plaintiff's assertion, I will draw an inference in her favor.

## II.  STANDARD OF REVIEW

A motion for summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   Summary judgment is proper when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A party seeking summary judgment initially bears the burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  "Evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

## III  DISCUSSION

### A.  Counts 1, 2, 5, and 7: Title VII, 42 U.S.C. § 1981 and PHRA Employment Discrimination

All defendants believe they are entitled to summary judgment on plaintiff's employment discrimination claims because plaintiff cannot prove that defendants treated similarly situated persons more favorably than plaintiff.  To the contrary, plaintiff has shown that several of her similarly situated co-workers violated the same email policy and received less severe discipline.  The burden shifting McDonnell Douglas analytical

framework applies to each of plaintiff's claims under Title VII, Section 1981 and the

Pennsylvania Human Relations Act (PHRA).  411 U.S. 792 (1973); Jones v. Sch. Dist. of

Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999) ("[D]isparate treatment race

discrimination claims under Title VII, section 1981, and the PHRA require application of

the familiar burden-shifting framework the Supreme Court articulated in McDonnell

Douglas Corp. v. Green.").  Since plaintiff can use evidence of preferable treatment to

satisfy her burden at both the prima facie and pretext stages of the analysis, I will first

consider the parties arguments on whether plaintiff's proposed comparators are similarly

situated.  Because I find that the comparators are similarly situated, plaintiff has carried

her burden under McDonnell Douglas.

      A similarly situated employee does not need to be identically situated, but the

comparator must be similar to plaintiff in "all relevant respects."  Wilcher v. Postmaster

Gen., 441 F. App'x 879, 881-82 (3d Cir. 2011) cert. denied, 132 S. Ct. 1645 (2012)

(citing Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259–261 (5th Cir.2009); Russell v.

University of Toledo, 537 F.3d 596 (6th Cir.2008)) (accepting the "all relevant respects"

test applied by other circuits); Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222-23

(3d Cir. 2009) (citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.1997))

("'similarly situated' does not mean identically situated…").  Factors relevant to the

analysis are whether the employees dealt with the same supervisor, were subject to the

same standards, shared similar job responsibilities and the nature of the misconduct.

Wilcher, 441 F. App'x at 881-82 (citing Lee, 574 F.3d at 259–261; Burks v. Wis. Dep't of

Transp., 464 F.3d 744 (7th Cir.2006));  Opsatnik, 335 F. App'x at 222-23 (citing Radue v.

Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir.2000)).  Whether comparators are similarly situated is generally a question of fact for the jury.  *See* McDonald v. Village of Winnetka, 371 F.3d 992, 1002 (7th Cir.2004) (collecting cases).  Nonetheless, summary judgment is appropriate where there is no evidence from which a jury could conclude the parties were similarly situated.  *See* Opsatnik, 335 F. App'x at 223-4 (affirming a grant of summary judgment because there was no evidence that comparators were similarly situated).

Plaintiff's proposed comparators are her fellow co-workers at LETA who also violated the email policy.  There appears to be no real dispute that the comparators are similar in the respect that they worked for the same employer, in the same building, reported to the same supervisor (defendant Shiffer), and violated the same email policy. Wilcher, 441 F. App'x at 882 (relevant factors include similar job responsibilities, reporting to same supervisors, and nature of misconduct); Opsatnik, 335 F. App'x at 223 (finding employees subject to same standards is also a relevant factor).  Rather, defendants contend that the proposed comparators are not similarly situated because plaintiff's violation of the email policy was more serious than her co-workers' violations. Specifically, they claim that plaintiff was the only employee to use her county email for personal financial gain and that plaintiff was the only employee to use her email in violation of county policy after defendant Shiffer's April 16, 2010 warning.[5]  Defendants arguments are not persuasive because the material facts are in dispute, and even if they

---

[5]Defendants also maintain that Ms. Long, as plaintiff's supervisor, is not similarly situated because they had different job responsibilities.  However, this one fact is dispositive.  A reasonable jury could conclude that Ms. Long and Ms. Abdul-Latif were similarly situated because they both worked in the same building, for the same agency, under the supervision of Mr. Shiffer and subject to the same county policies.

were not in dispute, I could not find as a matter of law that plaintiff's violations were more serious than her co-workers'.

The material facts supporting defendants' argument are in dispute. First, plaintiff denies that she used her county email address to conduct her perfume business for personal gain. A review of plaintiff's email infractions, which defendants attached as supporting documentation to plaintiff's termination notice, do not contradict Ms. Abdul-Latif's denial. Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. PP at 26-37 (Doc. No. 48-2). Plaintiff sent several emails to Chris Williams requesting that he print forms related to her business. Id. at 26-36. One email from a co-worker asks plaintiff for a list of her perfume inventory. Id. at 37. None of the emails include a solicitation or an offer to purchase or sell perfume for plaintiff's profit. Second, plaintiff disputes that she was the only employee to violate the email policy after April 16, 2010. In support, plaintiff submits 59 pages of personal emails sent by co-worker Michelle Zolman between April 19 and July 8, 2010. Pl.'s Surreply Br. Ex. FFF (Doc. No. 55-3). Ms. Zolman received a one day suspension for these personal emails; she was not terminated. Since material facts are in dispute, I cannot resolve this question on summary judgment.

Even if these facts were not in dispute, a reasonable jury could still find that plaintiff's co-workers are similarly situated. Defendants attempt to compare Ms. Abdul-Latif to the plaintiff in Opsatnik to show that the proposed comparators did not commit violations of equal seriousness. 335 F.Appx at 223 (citing Wright v. Murray Guard, Inc., 455 F.3d 702, 710 (6th Cir. 2006)) ("Purported comparators must have committed offenses of comparable seriousness."). Opsatnik was terminated for operating a freight

9

train hauling hazardous waste above the speed limit – an operational offense.  To show that defendant Norfolk Southern's reason for termination was pretext, Opsatnik attempted to compare himself to 24 current and former Norfolk Southern employees.  Id. at 222.  The court found that several of the comparators, who were disciplined for non-operational offenses such as tardiness and substance abuse, were not similarly situated because they had not committed offenses of comparable seriousness.[6]  Id. at 223.

Unlike Opsatnik, Ms. Abdul - Latif's comparators are similar in "all relevant respects."  Wilcher, 441 F. App'x at 881-82.  The Opsatnik court justifiably found that there were no facts from which a jury could find that the proposed comparators were similarly situated to Mr. Opsatnik because hauling hazardous waste above the speed limit (Opsatnik's infraction) is objectively more dangerous than showing up late for work (comparators' infraction).  Here, I cannot say that sending emails regarding a perfume business is objectively more serious than sending emails mocking Spanish speaking welfare recipients.  Indeed, given that the facts of this case, a reasonable jury could find the welfare dog email more offensive than plaintiff's conduct.  Therefore, I could not conclude as a matter of law that plaintiffs proposed comparators are not similarly situated.

Since a reasonable jury could find that plaintiff's comparators are similarly situated, I return to the McDonnell Douglas analysis.  Accordingly, plaintiff must show

---

[6] The court analyzed and rejected two other groups of proposed comparators.  The first group was not similarly situated because the employees did not work in the same division as plaintiff and were therefore not subject to the same supervisor.  The second group worked in the same division and were disciplined for speeding violations.  The second group was not similarly situated because each of those employees had no history of prior discipline, whereas, Opsatnik had been disciplined on four prior occasions.

that she is a member of a protected class and suffered an adverse employment action

occurring under circumstances giving rise to an inference of unlawful discrimination.

*See* Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253(1981); *see also* Jones,

198 F.3d at 410-11.  Once plaintiff establishes a prima facie case, the burden shifts to

defendants to show a legitimate non-discriminatory reason for terminating plaintiff.  Id.

If defendant meets this burden, plaintiff must be afforded an opportunity to show that the

defendants' proffered reason is pretext.  Id.

 Plaintiff has established a prima facie case of employment discrimination.  There

is no dispute that plaintiff is a member of a protected class and that she suffered an

adverse employment action.  Rather, defendants deny they terminated plaintiff under

circumstances giving rise to an inference of discrimination.  Showing that similarly

situated non-members of the protected class were treated less favorably is one of a variety

of methods to create an inference of discrimination.[7]  Matczak v. Frankford Candy &

Chocolate Co., 136 F.3d 933, 939 (3d Cir. 1997) (citing Olson v. Gen. Elec. Astrospace,

101 F.3d 947 (3d Cir. 1996) ("favorable treatment outside the protected class is an

'alternative' element to a prima facie case…").  Plaintiff has adduced evidence that her

similarly situated co-workers, who were not members of her protected class, violated the

---

[7] The burden on plaintiff at the prima facie stage is not meant to be onerous, Burdine, 450 U.S. at 253, and courts should be most flexible when analyzing the inference of discrimination element.  Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 357 (3d Cir. 1999) (citing Torre v. Casio, Inc., 42 F.3d 825, 831 (3d Cir.1994)) ("[W]e have repeatedly emphasized that the requirements of the prima facie case are flexible, and in particular that 'the fourth element must be relaxed in certain circumstances.'")  Considering that preferable treatment is often a more difficult way of proving an inference of discrimination, it would be reversible error to require plaintiff to show preferable treatment at the prima facie stage.  Matczak, 136 F.3d at 940 (reversing district court for requiring plaintiff "to show that employees beyond the ADA's protection were treated more favorably than he was").  Nonetheless, plaintiff has met this challenge to make out her prima facie case.

same email policy, and that defendants disciplined plaintiff's co-workers less severely. These facts give rise to an inference of discrimination.

The burden shifts to defendant to offer a non-discriminatory explanation for terminating plaintiff.  County policy prohibits employees from using county computers for, *inter alia*, "activities focused on creating personal profit."  Defs.' Mot. for Summ. J. Ex. E at 14 (Doc. No. 40-10).  Defendants claim they terminated Ms. Abdul-Latif for violating the information security policy, and they have produced emails which purport to show plaintiff using her work email account to sell perfume.  Plaintiff does not dispute that defendants have met their burden at this stage.  Therefore, the burden shifts back to plaintiff to demonstrate that defendant's proffered reason is pretext.

To survive summary judgment at this stage, "a plaintiff must submit evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222 (3d Cir. 2009) (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994)).  "A violation of company policy can constitute a pretext for unlawful discrimination if others similarly situated also violated the policy with no adverse consequence."  Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 322 (3d Cir. 2000) (citing Delli Santi v. CNA Ins. Companies, 88 F.3d 192, 203-4 (3d Cir.1996)); *see* Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998) (citing Fuentes, 32 F.3d at 765)("[T]he plaintiff may show that the employer has previously discriminated against her, that the employer has discriminated against other

persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class.").

Plaintiff's reference to the treatment of her similarly situated co-workers provides abundant support for a jury to disbelieve defendants' non-discriminatory reason.  As discussed previously, plaintiff violated the same email policy as her co-workers, yet she was the only employee who was terminated.  Furthermore, plaintiff's immediate supervisor and one of her co-workers violated the email policy by forwarding an email ridiculing welfare recipients for not being able to speak English and being mixed in color.  Considering that EARN's English only policy is at the heart of this case, the fact that these employees received far lighter discipline is highly probative of pretext.  I will deny defendants' motion for summary judgment on plaintiff's employment discrimination claims.

### B.    Counts 3, 8 and 10 Title VII, §1981 and PHRA Retaliation

According to defendants, plaintiff's retaliation claims fail because she has no evidence of a causal connection, but to reach this erroneous conclusion, defendants misconstrue when plaintiff engaged in protected activity.  The elements of Title VII, Section 1981 and PHRA retaliation claims are: "(1) plaintiff engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action."  Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d

13

Cir.2000)).  Once plaintiff establishes a prima facie case, the burdens shift pursuant to McDonnell Douglas.  Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997) (citing Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir.1993); Waddell v. Small Tube Products, Inc., 799 F.2d 69, 73 (3d Cir.1986)) ("The allocation of the burden of proof for both the federal and state retaliation claims follows the familiar Title VII standards.").

Plaintiff claims her opposition to the English only policy was protected which defendants do not dispute.[8]  However, defendants would limit protection to those objections voiced directly to management. [9]  Defendants cite to no authority and I am unable to find any law supporting their position.  To the contrary, the focus of my analysis is the plaintiff's message, not to whom the message was conveyed.  *See* Barber v. CSX Distribution Servs., 68 F.3d 694, 702 (3d Cir. 1995) ("Our analysis requires only that we analyze the message that Barber conveyed, and not the medium of conveyance.").  The complaint must clearly identify the employer and oppose an employment practice made unlawful by Title VII.  Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc.,

---

[8] Neither side addresses whether the English only policy is an unlawful employment practice.  Protected activity includes participation in Title VII proceedings or opposition to unlawful discrimination.  Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006) (citing Slagle v. County of Clarion, 435 F.3d 262, 266 (3d Cir.2006)).  Plaintiff may pursue a retaliation claim if she, "hold[s] an objectively reasonable belief, in good faith, that the activity [she] opposes is unlawful under Title VII," Moore v. City of Philadelphia, 461 F.3d at 341 (citing Clark County v. Breeden, 532 U.S. 268, 271 (2001)).  Plaintiff has produced evidence that she thought the English only policy was discriminatory and created a hostile environment towards Hispanics.  Dep of pltf, doc. no. 45 ex 4, 123:24-124:3; 137:19-25.  Therefore, plaintiff's opposition to the English only policy was protected by Title VII.  *see* Moore v. City of Philadelphia, 461 F.3d at 342 (finding that white workers who became victims of adverse employment actions after they objected to a work environment that they reasonably perceived to be hostile to backs had a valid retaliation claim).

[9] Defendants do not dispute that plaintiff's complaints to defendant Long are protected.  This dispute is relevant in resolving the causation element.

450 F.3d 130, 135 (3d Cir.2006) ("Opposition to an illegal employment practice must identify the employer and the practice-if not specifically, at least by context.").

Plaintiff's statements to her co-workers qualify as protected opposition.  First, the statements clearly identify the English only policy by name and her opposition is clear by calling the policy "bullshit."  Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. XX (Doc. No. 49-3).  Her comments indicate that she thought that the policy was discriminatory, and she thought it was being enforced in a harassing manner. *Eg.* Id. Ex. K at 123:24-124:3 and 137:19-25 (Doc. No. 45-4).  Finally, the complaints clearly identify her employer in that she criticized her employer's policies while she was at work.  Contrary to defendants' assertion, the fact that plaintiff made these comments to co-workers and clients as opposed to her supervisors does not factor into the analysis.  Plaintiff has satisfied the first element of her prima facie case.

Next, plaintiff is required to produce evidence of an adverse employment action taken by her employer.  An adverse employment action is a materially adverse act which would "dissuad[e] a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548U.S. 53, 68 (2006).  Obviously, termination is an adverse employment action, which defendants do not dispute.

Finally, plaintiff completes her prima facie case by demonstrating a causal link between the protected activity and the adverse employment action.  Plaintiff can establish causation by showing 1.) temporal proximity between the protected activity and adverse action, 2.) a pattern of antagonism after the protected act or 3.) the record taken as a

15

whole supports an inference of retaliation.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000) (Kachmar v. Sungard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997) ("These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference.").  Since defendants conclude that plaintiff's last protected act was her complaint to Ms. Long on May 19, they believe that her termination on July 20 is too attenuated to show temporal proximity.[10]  I am unpersuaded because I reject defendants' analysis of the protected act and because they ignore that other evidence can show causation.

Here, the temporal proximity is evidence of causation.  Temporal proximity, without more, may create an inference of causation if the timing is unusually suggestive.  Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir.1989).  Ordinarily, a period of less than one week is unusually suggestive.  See Shenk v. Pennsylvania, 1:11-CV-1238, 2013 WL 1969311 (M.D. Pa. May 13, 2013) (collecting cases).  Defendant Shiffer learned of plaintiff's complaints about the English only policy on July 8.  Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. XX (Doc. No. 49-3).  He began paperwork to terminate plaintiff on July 14, or 6 days[11] after he learned of the protected activity.  Id. Ex. PP at 2 (Doc. No. 48-2).  These facts are enough to find a causal link.

Although six days is at the long end of what has been held to be unusually suggestive, closer inspection of the record also supports a finding of causation.

---

[10] If I were to accept defendant's analysis of the protected act, there would be a two month delay before plaintiff's termination.  Defendant would be correct in asserting that this period is too long to be unusually suggestive.  *See* Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (finding that a gap of two months was not unusually suggestive).

[11] As there was an intervening weekend, plaintiff argues that the delay is at most 3 business days.

According to Mr. Shiffer's notes, he devoted the intervening period to investigating the plaintiff.  *See* Id. Ex. XX (Doc. No. 49-3).  He inspected plaintiff's email account, and he interviewed her co-workers.  Were a jury to believe that defendants' non-discriminatory explanation is pretext, than they can also conclude that Mr. Shiffer used this interval to fabricate the false reason for her termination.  Upon review of the entire record, a reasonable jury could infer a causal link.

Since plaintiff has made out a prima facie case of retaliation, the burden shifts to defendant to offer a non-discriminatory reason.  As I have already discussed, defendants meet their burden; however, plaintiff has adduced sufficient evidence from which a reasonable jury could conclude that the proffered explanation is pretext.  Therefore, I will deny summary judgment against plaintiff's retaliation claims.

### C     Count 4. Monell Liability

Defendant Lancaster County moves for summary judgment against plaintiff's Monell claim, which plaintiff does not oppose.  A municipality is liable under Monell only when the plaintiff's constitutional rights are violated as a result of the municipality's policy or custom.  Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978).  A municipality is also liable when a constitutional tort results from the single decision by a municipal policymaker.  Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).  Plaintiff has not adduced any evidence that a policy or custom of Lancaster County infringed her Fourteenth or First amendment rights.[12]  Neither has plaintiff shown any

---

[12] While the English only policy is arguably a county policy, there are no facts suggesting that the English only policy caused plaintiff's termination.

facts from which a jury could reasonably conclude that defendant Shiffer was a policymaker for the purpose of imposing <u>Monell</u> liability on Lancaster County.  I will grant the county's motion.

### D.      Count 6. Section 1983 – Equal Protection

Defendant Shiffer argues that he is entitled to summary judgment because there is no evidence showing he purposefully discriminated against plaintiff.  To survive summary judgment, plaintiff must adduce evidence that defendants purposely discriminated against her by treating her differently from others similarly situated. <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1478 (3d Cir. 1990).  Since Ms. Abdul-Latif may use circumstantial evidence to show discriminatory intent, she rebuts Mr. Shiffer's argument by pointing to the same evidence she uses to support her employment discrimination claims.[13]  <u>Com. of Pa. v. Flaherty</u>, 983 F.2d 1267, 1273 (3d Cir. 1993) ("It is now well established that a *prima facie* showing of discriminatory intent may be proven indirectly, without a 'smoking gun,'….").  In an attempt to win his motion, Mr. Shiffer inundates me with facts which tend to show that he was not motivated by unlawful discrimination.  This argument fails because it requires me to draw an inappropriate inference in the movant's favor.

Defendant Long argues that she is not liable because there is no evidence that she was personally involved in any adverse action taken against plaintiff, but again plaintiff

---

[13] For example, a jury could infer discriminatory intent from defendant Shiffer's disparate treatment of Ms. Long and Ms. Abdul-Latif.  Mr. Shiffer suspended Ms. Long for one day for forwarding an email which many could consider racially offensive.  On the other hand, he fired plaintiff for sending an email pertaining to her side business. A jury could interpret such disparate treatment as Mr. Shiffer condoning bigotry in his office, which in turn, can imply a discriminatory animus to him.

meets her burden.[14]   A "supervisor may be personally liable under § 1983 if he or she *participated in* violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (emphasis added) (citing Baker v. Monroe Township, 50 F.3d 1186, 1190–91 (3d Cir.1995)).  Plaintiff has referenced several facts of record from which a reasonable jury could conclude that Ms. Long was intimately involved and participated in plaintiff's termination.[15]   Therefore, Ms. Long's arguments fail as well.

I will deny summary judgment on plaintiff's equal protection claim.  Plaintiff has established her prima facie case with evidence that her similarly situated co-workers were disciplined less severely for violating the same email policy.  Thereafter, the burdens shift pursuant to McDonnell Douglas.  Moussa v. Pennsylvania Dep't of Pub. Welfare, 413 F. App'x 484, 486 (3d Cir. 2011).  As discussed, defendants have offered a legitimate non-discriminatory reason, but plaintiff has ample evidence of pretext.  Therefore, plaintiff has produced enough evidence to take this case to trial.

---

[14] Presumably, Ms. Long's forwarding the welfare dog email forecloses an argument that there is no evidence of her discriminatory intent.

[15] 1.) Defendant Long and defendant Shiffer met with Ms. Soto where they learned that plaintiff met with the LCHRC complainants outside of LETA offices.  Pl.'s Resp. to Defs.' Mot for Summ. J. Ex. T at 80:09-81:08 (Doc No 46-5).  Plaintiff argues that defendants developed the pretext to terminate plaintiff as a result of this meeting.  2.) Defendant Long emailed Ms. Soto and directed Ms. Soto to document plaintiff's behavior.  Id. Ex. ZZ (Doc. No. 49-5).  3.) Defendant Long instructed Christopher Williams to document every time he witnessed plaintiff pull clients out of the Corporate Center. Id. Ex. BBB (Doc. No. 49-7).  4.) Defendant Long sent defendant Shiffer plaintiff's personnel file by email dated July 13, 2010.  Id. Ex. KK (Doc. No. 47-11).

### E. Count 9 & 10 – Individual Liability Under the PHRA

Defendants Shiffer and Long reason that since plaintiff cannot make out a claim for discrimination or retaliation against Lancaster County under the PHRA, it follows that she cannot make out a claim for individual liability against Mr. Shiffer and Ms. Long under the PHRA. Since I find that plaintiff can proceed with her discrimination and retaliation claims against the county, defendants' argument necessarily fails.

The PHRA extends liability to any persons, who "aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice...." 43 Pa. Cons. Stat. Ann. § 955(e). Courts have limited the reach of this language to supervisory employees who either fail to act to stop discriminatory treatment or directly discriminate against the plaintiff. *See* Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 552–53 (3d Cir.1996); *see also* Destefano v. Henry Michell Co., 99-CV-5501, 2000 WL 433993 at *2 (E.D. Pa. Apr. 13, 2000) (citing Frye v. Robinson Alarm Co., Civ. A. No. 97–0603, 1998 WL 57519, at *4 (E. D.Pa. Feb. 11, 1998)). The theory is that supervisory employees can share the discriminatory intent and purpose of the employer. Destefano, 2000 WL 433993 at *2 (citing Frye, 1998 WL 57519, at *4). It is undisputed that defendants Shiffer and Long were supervisory employees. As I have explained throughout this memorandum, there is sufficient evidence from which a jury could find that defendants Shiffer and Long were instrumental in the decision to terminate plaintiff. Thus, there is also enough evidence to find that they are individually liable under the PHRA. I will deny defendants' motion.

### F.  Count 11 - Public Accommodation Discrimination

Defendants Lancaster County and Mr. Shiffer move for summary judgment on plaintiff's public accommodation claim, because plaintiff never attempted to access services at LETA.  Plaintiff offers nothing in rebuttal.  The PHRA prohibits any person to "refuse, withhold from, or deny to any person because of his race, color, sex, religious creed, ancestry, national origin or handicap or disability, … any of the accommodations, advantages, facilities or privileges of such public accommodation"  43 Pa.C.S. § 955. Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts."  Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (citations omitted). Under analogous federal statues, an individual must attempt and be denied access to a place of public accommodation in order to assert a claim.  Shumate v. Twin Tier Hospitality, LLC, 655 F. Supp. 2d 521, 537 (M.D. Pa. 2009) (citing McCoy v. Homestead Studio Suites Hotels, 390 F.Supp.2d 577, 584–85 (S.D.Tex.2005)).  There are insufficient facts to support a public accommodations claim, because there is no evidence that plaintiff ever returned to LETA to access services.  I will grant defendants' motion on plaintiff's public accommodation claim.

### G.  Count 12 – Section 1983 First Amendment Retaliation

Defendants Shiffer and Long deny that plaintiff can establish either element of a First Amendment retaliation claim.  First, they argue that plaintiff's statements are not protected because they were part of her official duty.  Second, they believe plaintiff lacks any evidence that her statements were a substantial factor in defendants' decision to terminate Ms. Abdul-Latif.  I disagree.

When evaluating a First Amendment retaliation claim, I must first determine if plaintiff engaged in protected activity.  Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir.2009).  Courts apply a three part inquiry to determine if the plaintiff's speech is protected.  First, the court considers whether the plaintiff was speaking as a citizen or as an employee.  Hill v. Borough of Kutztown, 455 F.3d 225, 241–42 (3d Cir.2006) (citing Garcetti v. Ceballos, 547 U.S. 410 (2006)).  If the employee makes the statement pursuant to her official duties, the First Amendment affords no protection.  Garcetti, 547 U.S. at 421.  Next, the court reviews the record to see if the statement involved a matter of public concern.  Hill, 455 F.3d at 241.  A matter of public concern is one that "relat[es] to any matter of political, social, or other concern to the community."  Connick v. Myers, 461 U.S. 138, 146 (1983).  Finally, the speech is protected if the "government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made."  Hill, 455 F.3d at 241.  This analysis is a mixed question of law and fact for the court.  Gorum v. Sessoms, 561 F.3d at 184.

The Supreme Court has not set out "a comprehensive framework for defining the scope of an employee's official duties."  Garcetti, 547 U.S. at 424.  This is because the variety of fact situations which give rise to First Amendment claims are so diverse making a bright line rule impractical.  Id. at 418.  Thus, a district court must determine "whether a particular incident of speech is made within a particular plaintiff's job duties" after conducting an intensive inquiry of the record.  Foraker v. Chaffinch, 501 F.3d 231, 240 (3d Cir. 2007) *abrogated on other grounds by* Borough of Duryea, Pa. v. Guarnieri,

131 S. Ct. 2488 (U.S. 2011). <u>Garcetti</u> instructs that this inquiry is a practical one.  547 U.S. at 424.

Defendants believe that plaintiff's official duties included advising the Corporate Center clients to file complaints with LCHRC because the Lancaster County employee handbook requires employees to report discrimination to their supervisors or to the county human resources department.[16]  Additionally, there is a long line of Third Circuit precedent holding that an employee's complaints to her supervisor are not afforded First Amendment protection.  <i>See, e.g.</i> <u>Morris v. Philadelphia Hous. Auth.</u>, 487 F. App'x 37, 39 (3d Cir. 2012) (citing <u>Foraker v. Chaffinch</u>, 501 F.3d 231, 240 (3d Cir.2007)) ("We have consistently held that complaints up the chain of command about issues related to an employee's workplace duties—for example, possible safety issues or misconduct by other employees—are within an employee's official duties.").  Plaintiff concedes that her complaints to Ms. Long are not protected, but in her view, the handbook's directive[17] and case law do not apply to her advice to the LCHRC complainants.  Indeed, courts have found that a plaintiff's complaints about workplace discrimination to persons outside the chain of command are made as a citizen - not as an employee.[18]  <u>Dahlia v. Rodriguez</u>, 735 F.3d 1060 (9th Cir. 2013) (citations omitted) ("When a public employee

---

[16] The handbook states, "Any employee who believes they have been the victim of discrimination or harassment or who has concerns about discrimination or harassment at work should report it immediately to their supervisor or department head.  In the event that it is inappropriate or you are uncomfortable reporting the incident to the department head, it should be reported to the Human Resources Office."  Defs.' Reply Br. Ex. W (Doc. No. 54)

[17] Even if the employee handbook was applicable, it would not control my analysis.  <i>See</i> <u>Garcetti</u>, 547 U.S. at 425 ("[T]he listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.").

[18] The Third Circuit has not reached this question.

communicates with individuals or entities outside of his chain of command, it is unlikely that he is speaking pursuant to his duties."); Davis v. McKinney, 518 F.3d 304, 313 (5th Cir.2008) (citations omitted) ("If however a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen.").

To resolve the issue, I conducted a review of the record to determine the scope of plaintiff's official duties.  It appears that plaintiff's duties included teaching clients how to use various computer programs, and she supervising their progress in the LETA curriculum.[19]  While she had a duty to report discrimination to her supervisors, I do not see how her role in the classroom required her to also advise the complainants of their legal rights.[20]  The fact that her advice related to the English only policy and was made at her place of employment is not enough to bring her speech within her official duties. Garcetti, 547 U.S. at 420 – 421 (citations omitted).  Defendants cite to no additional facts of record to persuade me otherwise.

After reviewing the record as a whole, plaintiff's official duty did not include advising her clients to file the LCHRC complaint.  Defendants do not dispute that the

---

[19] At the time plaintiff advised the clients to file a complaint, she was the lead of the Corporate Center.  The purpose of the Corporate Center was to teach clients computer and printing skills to improve their chances of finding employment.  Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. K at 39:1 – 40:9 (Doc. No. 45-4).  Ms. Long hired plaintiff for the position because plaintiff was engaged, energetic and motivated people to work.  Id. Ex. L. at 42:11-13 (Doc. No. 45-5).  Christopher Williams was the only other LETA employee assigned to the Corporate Center, and worked with clients on printing skills.  Id. Ex. K at 40:10-25.

[20] In fact, it appears she was prepared to acquiesce to the English only policy.  She posted English only signs in the Corporate Center, and advised her clients in English that she could no longer speak Spanish with them.  It was then that the LCHRC complainants approached plaintiff to see what they could do to get rid of the policy, and she told them to contact the commission.

plaintiff's speech involved a matter of public concern.[21]   Neither do they explain how the county's interest in efficient management of the LETA outweighs plaintiff's interest in advising her clients of their rights.   Therefore, I find that plaintiff engaged in protected conduct.

The second element of a First Amendment retaliation claim requires a plaintiff to show that her employer knew about the protected activity and that the protected activity was a substantial factor in the retaliatory action.  Ambrose v. Twp. of Robinson, Pa., 303 F.3d 488, 493(3d Cir. 2002).  Plaintiff may prove knowledge and substantiality with circumstantial evidence.  *See* Palfrey v. Jefferson-Morgan Sch. Dist., 355 F. App'x 590, 594 (3d Cir. 2009).  Circumstantial evidence of temporal proximity is relevant to showing that the protected activity was a substantial factor in the retaliation, but plaintiff may not use temporal proximity to establish knowledge.  S*ee,* Id.  ("To be sure, the Defendant Board members' denials of their own knowledge alone is not fatal to her case. However, Palfrey must come forward with evidence, other than circumstantial evidence consisting of temporal proximity, that the Defendants knew of her [protected activity]….").

Defendants Shiffer and Long argue they did not know that plaintiff advised her clients to file complaints with the LCHRC, but plaintiff has pointed to sufficient evidence of record to create a disputed issue of fact.  Defendant Shiffer wrote in his notes after meeting with Ms. Soto on July 8, 2010: "Betsy's [sic] comes to door, opens slightly, puts

---

[21]The Third Circuit has held that reporting discrimination at a public agency is a matter of public concern. Rode v. Dellarciprete, 845 F.2d 1195, 1201 (3d Cir. 1988).  Therefore, disputing this element would be futile.

her hand in to room and motions for specific participant [sic] to come with her.

*Participants are those who recently filed complaints against LETA's EARN program*."

Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. XX at 2 (Doc. No. 49-3) (emphasis added).

Ms. Long was present for the meeting.  On July 13, Mr. Williams sent defendant Shiffer

an email stating: "She has continued to vent to participants (Luz Ramos and Janilsa

Molina) outside on breaks after her position change about the Spanish policy is 'bullshit,

and against the rights of Hispanic people.'"  Id. Ex. BBB at 2 (Doc. No. 49-7).[22]  A

reasonable jury could conclude from these facts that defendants Shiffer and Long knew

of plaintiff's protected activity on July 8.

Since defendants' argue they did not know of plaintiff's protected activity, they do

not address whether plaintiff's protected activity was a substantial factor in plaintiff's

termination.  As I discussed with regard to plaintiff's Title VII retaliation claim, there is

unusually suggestive temporal proximity to support a finding that defendants terminated

plaintiff in retaliation for advising her clients to file the LCHRC complaints.  I will deny

defendants' motion for summary judgment on plaintiff's First Amendment retaliation

claim.

In the alternative, defendant Long argues that she cannot be held individually

liable, because there is no evidence to support a finding that she was personally involved

in the decision to terminate plaintiff.  As First Amendment retaliation is a claim under 42

U.S.C. § 1983, the standard for supervisory liability is the same as plaintiffs §1983 Equal

---

[22] Mr. Williams sent this email in response to an email from Ms. Long in which she stated, "I know Joe asked you to give him a detailed account of what you saw in the Corporate Center with a hand coming through the door and pulling people out."  Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. BBB at 3 (Doc. No. 49-7).  A jury could infer that Ms. Long was aware of Mr. Williams response.

Protection claim.  There is ample evidence for a jury to conclude that defendant Long participated in plaintiff's termination in violation of plaintiff's First Amendment rights. *See supra* note 15.  Ms. Long's alternative argument is unavailing.

## IV.    CONCLUSION

For the foregoing reasons, I will grant defendants' motion for summary judgment as to plaintiff's Monell claim against Lancaster County and her PHRA public accommodations claim.  Defendants' motion is otherwise denied.

An appropriate order follows.